# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE NEWMAN,<br><br>                    Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                    Defendant. | Case No. 08cv2066 BTM (CAB)<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff has filed a Motion for Summary Judgment on her social security appeal [Doc. 20]. Defendant has filed an Opposition and Cross-Motion for Summary Judgment [Doc. 25]. For the following reasons, the Court **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Cross-Motion.

## I. BACKGROUND

**A. Plaintiff's first application for Social Security benefits**

Plaintiff has filed three separate applications for Social Security benefits. Although the third application is the one directly at issue here, the Court reviews the history of Plaintiff's filings because they are relevant to the issues before the Court.

Plaintiff protectively[1] filed her first application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") in August 2001, alleging disability since May 1995. Her claim was denied, and she sought a hearing before an Administrative Law Judge ("ALJ"). But her request for a hearing was late, and Administrative Law Judge Burgess ("ALJ Burgess") dismissed it as untimely. Plaintiff appealed the dismissal to the Appeals Council, which found good cause for the late filing and in January 2004, the Council remanded the case to ALJ Burgess for a hearing.

ALJ Burgess scheduled a hearing and Plaintiff submitted a pre-hearing memorandum, but it appears that no hearing was ever held. In September 2004, ALJ Burgess issued a decision, granting Plaintiff a closed period of disability from November 24, 1996 to October 2, 2002. The parties dispute whether the evidence establishes that Plaintiff appealed this decision. Plaintiff points to an entry in the record stating, "DI filed for Appeal Council 11/09/2004 for closed period—fwd to AC." Defendant argues that the statement is an informal notation made by a Social Security employee, and that there is no standard appeal form in the record nor any indication that Plaintiff's then attorneys requested an appeal. The parties do agree that the Appeals Council has not issued a decision on the purported appeal.

**B. Plaintiff's second application for benefits**

While Plaintiff litigated her first claim for benefits, she filed a second application for SSI in December 2002. This claim was denied in January 24, 2003 and it appears she took no further action on this application.

**C. Plaintiff's third application for benefits—the application at issue here**

Plaintiff filed her third application for SSI and DIB in October 2004. After the application was denied, she requested a hearing before an ALJ. Before the hearing, her

---

[1] A protective filing is a claimant's first application for benefits, and may allow a claimant to have an application date that is earlier than the actual date of filing. *See What is protective filing?*, http://www.ssdrc.com/disabilityquestionsmain20.html (visited March 25, 2010).

attorney wrote a letter asking, among other things, that the ALJ "reopen the prior application."[2]

ALJ Peter J. Valentino held a hearing in September 2007 on Plaintiff's third application. Plaintiff testified at the hearing, as did medical and vocational experts. In October 2007, ALJ Valentino issued a decision, which found Plaintiff had the residual functional capacity ("RFC") to perform light work and was not disabled. ALJ Valentino did not explicitly address Plaintiff's earlier request to reopen her other applications.

Plaintiff requested review of ALJ Valentino's decision, but the Appeals Council denied it. Plaintiff now appeals.

## II. LEGAL STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. *Id.* Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## III. DISCUSSION

Plaintiff's appeals on two grounds. First, Plaintiff argues that ALJ Valentino's decision not to reopen Plaintiff's past applications violated her due process rights. And second, she argues that ALJ Valentino's finding regarding Plaintiff's RFC was not supported by substantial evidence.

---

[2] Because Plaintiff had two prior applications when her attorney wrote this letter, it is unclear which application her attorney wished to reopen. But in this appeal, Plaintiff only addresses the failure to reopen the first decision by ALJ Burgess, which granted Plaintiff a closed period of disability. Defendant does not dispute this characterization. Accordingly, the Court treats the letter as a request to reopen the first application.

**A.     The Court Has Jurisdiction to Review the Denial to Reopen**

Before the Court may review ALJ Valentino's decision not to reopen Plaintiff's past applications, the Court must address whether it has jurisdiction to do so. A decision not to reopen a prior, final benefits decision is generally not subject to judicial review. *Evans v. Chater*, 110 F.3d 1480, 1482 (9th Cir. 1997) (citing *Califano v. Sanders*, 430 U.S. 99, 107–09 (1977). But there is a limited exception to this rule when the "Secretary's denial of a petition to reopen is challenged on constitutional grounds." *Id.* The "exception applies to any colorable constitutional claim of due process violation that implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001) (citing *Evans*, 110 F.3d at 1483). A colorable claim is one that is not "wholly insubstantial, immaterial, or frivolous." *Rolen v. Barnhart*, 273 F.3d 1189, 1191 (9th Cir. 2001) (quoting *Evans*, 110 F.3d at 1483).

Here, Plaintiff has asserted a colorable constitutional claim for several reasons. First, the Appeals Council ordered that ALJ Burgess hold a hearing on Plaintiff's first application. But the parties agree that Plaintiff did not have a hearing on her first application for benefits. Although it is unclear from the record why her scheduled hearing did not happen, it is presumably because ALJ Burgess issued a decision which he characterized as "fully favorable." *Cf.* 20 C.F.R. § 404.942 (an attorney advisor may issue a decision without a hearing if fully favorable to claimant). But ALJ Burgess's decision granted only a closed period of disability from November 24, 1996 to October 2, 2002, and Plaintiff sought an open period. Also, there is no record that ALJ Burgess considered the medical records from the period of October 3, 2002 to September 13, 2004. So ALJ Burgess's decision was not actually fully favorable, and without a hearing she did not have a meaningful opportunity to be heard as to disability after October 2, 2002. Based on this denial of her right to be heard, Plaintiff has a colorable claim for a violation of due process. *See Udd*, 245 F.3d at 1099 ("It is axiomatic that due process requires that a claimant receive meaningful notice and an

opportunity to be heard before his claim for disability benefits may be denied.")

Second, there is evidence in the record that Plaintiff appealed ALJ Burgess's granting of a closed period of disability and that the appeal was never decided. There is a notation that states, "DI filed for Appeal Council 11/09/2004 for closed period—fwd to AC." Although Defendant is right that there is no formal request for an appeal in the record, one of Defendant's employees noted the filing of an appeal. The evidence supports at least a colorable claim that Plaintiff did appeal but the appeal seems to have slipped through the cracks.

And third, ALJ Valentino failed to address Plaintiff's request to reopen her earlier applications. Plaintiff's counsel sent a letter to the Social Security Administration ("SSA") in February 2007 seeking to reopen her earlier applications. But ALJ Valentino's decision, which issued in October 2007, failed to grant or deny her request. Although Plaintiff's counsel did not raise the issue during the hearing, Plaintiff never withdrew her request to reopen and ALJ Valentino should have addressed it.

For these reasons, Plaintiff has raised a colorable constitutional claim that "implicates a due process right either to a meaningful opportunity to be heard or to seek reconsideration of an adverse benefits determination." *Udd*, 245 F.3d at 1099. The Court therefore has jurisdiction to review ALJ Valentino's denial of Plaintiff's request to reopen. *Id.*

**B.     The Request to Reopen Should Have Been Granted**

A determination regarding eligibility for social-security benefits may be reopened for good cause. 20 C.F.R. § 404.988(b). Good cause exists if "[n]ew and material information is furnished," or if "[t]he evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. § 404.989(a)(1), (3). Here, the Court finds there was good cause to reopen because of new medical evidence that no ALJ has considered, and because Plaintiff was denied an opportunity to be heard regarding her alleged disability between October 3, 2002 to October 20, 2004.

Plaintiff argues that in determining whether she was disabled, there are medical

records from a period of time that no ALJ has explicitly considered: October 3, 2002 to October 20, 2004. October 3, 2002 is the day after Plaintiff's closed period of disability, as found by ALJ Burgess in response to Plaintiff's first application for benefits. In his decision, ALJ Burgess did not explicitly address whether Plaintiff was disabled after October 2, 2002. Then, ALJ Valentino issued his decision on Plaintiff's third application, and only considered her eligibility for disability after October 20, 2004, when she filed her third application. Therefore, Plaintiff argues, no ALJ has reviewed her medical records to find a disability from October 3, 2002 to October 19, 2004.

The Court has carefully reviewed the records to which Plaintiff cites in support of her disability during October 3, 2002 through October 19, 2004. (*See* R. 380–475, 625–722.) Although there are only a few medical records from that period and most of them have already been reviewed by ALJ Valentino, they may provide a basis for a finding of disability.

First, there are two records that a California Department of Developmental Services ("DDS") physician completed on January 22, 2003 (R. 455–75). One is a psychiatric review technique form, which states Plaintiff's diagnosis of depressive disorder not otherwise specified or bipolar disorder is accompanied by poly-substance abuse. It also says that "[t]reating sources have doubted accuracy of Cl's report of symptoms . . . others infer the affective symptoms are drug induced . . . . Allegations of severe dependency and inactivity are not fully credible for above reasons – RFC needed." That day, the same DDS physician conducted an RFC, or residual function capacity assessment. The RFC found Plaintiff with moderate limitations in the ability to carry out detailed instructions, maintain attention for extended periods, and complete a normal workday or week without interruptions from psychological symptoms. The RFC also found some moderate social limitations, including the ability to act appropriately with the general public, accept instructions and respond to criticism from supervisors, get along with coworkers, and maintain socially appropriate behavior. Overall, the physician concluded that Plaintiff "can perform routine repetitive tasks" (R. 474).

Second, there are records dated January 7, 2004 and February 4, 2004 documenting

neck pain (R. 625–29). The February entry states that Plaintiff has full range of movement in her neck. ALJ Valentino received these records.

And third, there is an initial mental health assessment by the San Diego Health and Human Services Agency dated October 11, 2004 (R. 640–47). The psychologist who conducted the assessment concluded Plaintiff had bipolar disorder and recommended medication management and group therapy. ALJ Valentino reviewed this assessment and relied on it in concluding Plaintiff suffered from bipolar disorder (R. 23).

These are the only medical records dated within the period between October 3, 2002 and October 19, 2004, and ALJ Valentino received all but one of them. Even though the medical records by themselves may not establish disability during October 2002 to October 2004, the Court questions ALJ Burgess's granting of a closed period of disability, ending October 2, 2002. Not only did ALJ Burgess not hold a hearing and give Plaintiff an opportunity to be heard, but he decided that Plaintiff was no longer disabled on the day she was discharged from a psychiatric hospital on October 2, 2004. ALJ Burgess found that she had been hospitalized because she was a danger to herself and exhibited several symptoms, including flight of ideas, irritability, depression with suicidal thoughts and auditory hallucinations commanding her to kill herself (R. 493). "She had a protracted hospital course with psychotic symptoms that were very difficult to treat." *Id.* Although she gradually improved until her discharge on October 2, her symptoms were severe. ALJ Burgess should not have found she was no longer disabled after being released from the hospital without giving Plaintiff an opportunity to be heard. Moreover, it seems very unlikely that Plaintiff would no longer be disabled the day after being released from in-patient psychiatric care.

ALJ Valentino erred in failing to consider Plaintiff's request to reopen her past applications. There was good cause to reopen them, and the Court remands to the Commissioner of Social Security to reopen Plaintiff's first application. The Commissioner should reconsider the finding that Plaintiff was no longer disabled after October 2, 2002 and make specific findings supported by the evidence as to any period of disability thereafter.

**C.    ALJ Valentino Erred in Not Addressing Plaintiff's Eligibility for Disability Insurance Benefits**

At the hearing on Plaintiff's third application, her counsel asked ALJ Valentino to evaluate her eligibility for DIB.  Although ALJ Valentino agreed to do so, he did not address Plaintiff's eligibility in his decision.  Specifically, ALJ Valentino did not calculate Plaintiff's date last insured.  Plaintiff claims that this failure is a violation of her constitutional rights to due process and equal protection under the law.

Plaintiff applied for both SSI and DIB.[3]  In order to receive DIB, a person must be "both [1] insured for disability benefits and [2] disabled within the meaning of the Act."  *Harvell v. Chater*, 87 F.3d 371, 372 (9th Cir. 1996) (citing 42 U.S.C. §§ 423(a)(1)(A), (E)).  Plaintiff focuses on the first element of this test—that she must be insured—and alleges error based on the ALJ's failure to address her date last insured with respect to her third application for benefits.

Plaintiff is right that ALJ Valentino should have calculated her date last insured.  On remand, the Commissioner of Social Security shall calculate her last date insured for purposes of determining her eligibility for DIB from October 3, 2002 onward.

**D.    ALJ Valentino's Residual Functional Capacity Finding Was Not Based on Substantial Evidence**

Plaintiff argues that ALJ Valentino's decision was not supported by substantial evidence.  The evidence supporting a decision must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lewin v. Schweiker*, 654 F.2d 631, 633 (9th Cir. 1981).  The Court must look at the record as a whole in reviewing an ALJ's decision.  *Id.*  Moreover, an "examiner's findings should be as comprehensive and analytical as feasible," and the examiner must "make specific findings" so "that a reviewing

---

[3] Defendant disputes that Plaintiff applied for DIB in her third application for SSI.  But ALJ Valentino agreed that an application for SSI was a tacit application for DIB, (R. 726–27), since the application for SSI requests "benefits under the other programs administered by the Social Security Administration."  *See, e.g.,* (R. 479).

court may know the basis for the decision." *Id.* at 635.

ALJ Valentino's decision suffers from several factual errors that undermine his conclusion. First, he wrote that the "claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. She has not required any inpatient psychiatric hospitalization, PHP intervention, or emergency care treatment for exacerbations of her mental symptoms." (R. 24.) Although this may be true of the period after she filed her third application for benefits in October 2004,[4] Plaintiff has been hospitalized several times. From September 1995 to June 2001, Plaintiff was under psychiatric care at Chartres-Pontchartrain Mental Health Center ("CPMHC"), where she was diagnosed with "Major Depression and Cocaine Abuse in partial remission." (R. 492.) She was on several medications, including Remeron, Xanax, Desyrel, Mellaril, Benadryl, Lithium, Ambien and Ativan. *Id.* She was hospitalized for depression and suicidal observation from June 12 to June 18 of 2001, and then diagnosed with bipolar disorder. *Id.* She was readmitted to a hospital on October 21 until October 27, 2001 for suicidal thoughts. *Id.* Then from November 2001 to April 2002, she was again under psychiatric care at CPMHC. *Id.* She was in inpatient care again on June 8, 2002, and started on Lithium, Klonopin, and Risperdal. *Id.* at 493. She was discharged on June 24. Plaintiff was then admitted to the hospital again on September 26 through October 2, 2002. These were all findings made by ALJ Burgess in Plaintiff's first application for benefits. And as of 2006, Plaintiff still took several medications, including Trazadone, Lexapro, Ambien, Klonipin, Seroquel, and others. (R. 649–672.)

Second, ALJ Valentino found that the "objective medical evidence shows that the medications have been relatively effective in controlling the claimant's symptoms." (R. 24.) This is flatly contradicted by the records of treating physician Dr. Alice Krull, who saw Plaintiff from late 2004 through 2007. In many sessions with Dr. Krull, Plaintiff complained of insomnia, and feeling worried, stressed and anxious. (R. 648–672, 714–722.) She told Dr.

---

[4] Plaintiff testified at her hearing that she stayed overnight at San Diego County Medical Services sometime in April 2007, probably for psychiatric reasons, although it is not completely clear why she was hospitalized.

Krull that she rarely left her room. Dr. Krull often noted that Plaintiff appeared depressed, irritable, and often tearful. *Id.* On January 19, 2007, she told Dr. Krull that she talked to things that "are not there." (R. 718.) Plaintiff also specifically mentioned some of her medications, Roserem and Lunesta, were not working. (R. 651, 719.)

Third, ALJ Valentino wrote that Plaintiff "has not alleged any side effects from the use of medications." (R. 24.) But Dr. Krull noted several times in 2005 and 2006 that Plaintiff complained of side effects, including feeling drugged, hallucinating, and diarrhea. (R. 653, 654, 662.) Plaintiff also told Dr. Krull that she no longer wanted to take Lithium, although her reasons are not stated in the record. (R. 717.)

Fourth, ALJ Valentino erred in finding that "[t]here is no evidence of sleep deprivation due to depression." (R. 24.) Plaintiff complained of insomnia in almost every session with Dr. Krull. (R. 649, 650, 652, 653, 654, 657, 658, 659, 662, 664, 665, 716.)

Fifth, the ALJ said that Plaintiff can "run errands and go shopping." (R. 24.) But in an October 11, 2004 medical assessment by psychologist Greg Koch, he quoted Plaintiff as saying she spends "hours in a grocery store just reading labels," and that "shopping centers make [her] nervous, there's too much to choose from and it's too much. Grocery stores are fine." (R. 672.)

Sixth, he wrote that Plaintiff "even uses the vehicle to take semi-annual trips to New Orleans." (R. 24.) At the hearing, however, Plaintiff said she flew to New Orleans. (R. 732.)

Seventh, ALJ Valentino said that "[n]one of the claimant's physicians have opined that she is totally and permanently disabled from any kind of work." (R. 24.) But two psychologists from the same clinic as Plaintiff's treating physician gave Plaintiff Global Assessment of Functioning ("GAF") scores of 30 and 31, in October 2004 and November 2005, respectively. (R. 646, 657.) And in September 2006, Dr. Krull found Plaintiff was unable to work and had marked limitations in virtually every category in a mental residual functional capacity assessment form. *See* (R. 692–97.)

Each of these factual errors supported ALJ Valentino's conclusion that the "claimant's allegations are not credible to establish a more restrictive residual functional capacity." All

these errors undermine his conclusion, which is not supported by substantial evidence in the record. Indeed, in many instances his findings and conclusions are directly contradicted.

### E.     The ALJ Failed to Give Specific and Legitimate Reasons for Rejecting the Treating Physician's Opinion

Psychologists at the San Diego County Department of Health and Human Services, who work in the same office as Plaintiff's treating physician, gave Plaintiff GAF scores of 30 and 31, in October 2004 and November 2005, respectively. (R. 646, 657.) And her treating physician, Dr. Krull, found Plaintiff was unable to work and had marked limitations in virtually every category in a mental residual functional capacity assessment form. *See* (R. 692–97.) ALJ Valentino rejected these scores and conclusions as inconsistent with the treating record. Plaintiff argues the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Krull's opinion.

Generally, opinions of treating physicians are given controlling weight when supported by medically acceptable diagnostic techniques and when not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Where a treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1990). In doing so, the ALJ must do more than proffer his own conclusions—he must set forth his own interpretations and why they are superior to that of the treating physician's. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The ALJ may meet this burden by conducting a detailed and thorough discussion of the facts and conflicting evidence, and by explaining his interpretations and findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, ALJ Valentino's rejection of the treating physician's opinion was not supported by substantial evidence, and he failed to give specific and legitimate reasons for his rejection.

ALJ Valentino noted that Dr. Krull[5] had assigned Plaintiff GAF scores of 30 and 31, but gave those scores "very little weight." He explained that Dr. Krull's "GAF ratings and the marked limits in most mental functional domains are not substantiated by the treating progress notes nor indicated by Dr. Mouni Soliman's consultative evaluation, who found Plaintiff had no mental limits and assigned a GAF rating of 65." But Dr. Krull's treating notes show that Plaintiff tried several different types of medications to manage her mental symptoms, and was frequently depressed, sleep deprived, anxious, and paranoid. The notes also show that she rarely left her house, and was fearful of public places. ALJ Valentino does not discuss why these progress notes do not substantiate the marked limitations that Dr. Krull found.

He also places too much weight on Dr. Soliman's evaluation, which found Plaintiff had a GAF score of 65. Dr. Soliman's report is conclusory, and fails to discuss why his GAF score differs so much from the GAF 30 score given by the psychologist at Plaintiff's clinic.[6] He does not mention Plaintiff's bipolar diagnosis, her insomnia, or that she rarely leaves the house. He writes that she cannot concentrate on daily activities, yet later says that she can understand, carry out and remember simple and complex instructions. And he failed to discuss the treating notes, which indicate that Plaintiff was significantly more disabled.

ALJ Valentino's two justifications for rejecting the treating physician's opinion, the treating records and Dr. Soliman's opinion, are invalid. He failed to explain why the treating records do not support the low GAF scores, and Dr. Soliman's report was largely conclusory and failed to consider all the medical evidence. ALJ Valentino did not overcome the presumption given to the treating physician's opinion, and he should have given Dr. Krull's opinion controlling weight.

The Court also notes that the medical examiner at the hearing equivocated on the degree of Plaintiff's impairments. First he said that he was impressed with Dr. Krull's notes because they "give a fairly good description of the problem." (R. 758.) And he was "inclined

---

[5] The GAF scores were not assigned by Dr. Krull, but by psychologists in the same clinic. *See* (R. 646, 657.)

[6] Although two psychological evaluations were done at Plaintiff's clinic, only was done at the time Dr. Soliman evaluated Plaintiff.

to think that the county is doing a good job and that [he] need[s] to respect their opinion." Although he said that Plaintiff's demeanor at the hearing did not support a GAF of 30, he noted that some mentally ill people can function for thirty or forty minutes without difficulty, "[b]ut it doesn't always tell us actually how sick they are." (R. 761.) In other words, the medical examiner regarded the treating physician's notes as credible and did not rule out the possibility the Plaintiff was disabled.

For these reasons, ALJ Valentino failed to overcome the presumption afforded to the treating physician's assessment. The ALJ's findings and conclusions were not supported by substantial evidence in the record, and the treating physician's opinion is controlling.

The vocational expert testified that, assuming the treating physician's assessment was true, Plaintiff could do no work. Therefore, the Court **REVERSES** ALJ Valentino's decision, and holds that Plaintiff has been disabled and incapable of performing any work since October 20, 2004, the date the application was filed.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. 20] and **DENIES** Defendant's Cross-Motion for Summary Judgment [Doc. 25]. The Court **REMANDS** the application to the Commissioner of Social Security for the reopening of Plaintiff's first application for benefits and evaluating her for disability from October 3, 2002 and October 19, 2004, and **REVERSES** the Commissioner's decision finding Plaintiff not disabled. Plaintiff has been disabled since October 20, 2004. This case is further **REMANDED** to the Commissioner for calculation of SSI and DIB for the period after October 20, 2004 and any prior period during which the Commissioner finds on remand Plaintiff to be disabled.

**IT IS SO ORDERED.**

DATED: June 18, 2010

Honorable Barry Ted Moskowitz
United States District Judge